**VEMCO, INC., Plaintiff–Appellant,**

v.

**John CAMARDELLA, et al., Defendants–Appellees.**

**No. 93–1412.**

United States Court of Appeals, Sixth Circuit.

Argued March 8, 1994.

Decided April 29, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied July 7, 1994.

---

port and recommendation of the magistrate judge, and dismissed the counts under § 1962(a) & (c), and the count for conspiracy to defraud, for the failure to state a claim. The district court dismissed without prejudice the pendant state law fraud claim.

Plaintiff-appellant Vemco appeals the dismissal of Counts I and II, the claims under § 1962(a) & (c). Vemco does not appeal the dismissal of the conspiracy claim. We affirm the judgment of the district court.

### I.

The allegations of Vemco's amended complaint, which we accept as true for the purposes of a motion to dismiss under Rule 12(b)(6), *see Scheuer v. Rhodes,* 416 U.S. 232, 235–37, 94 S.Ct. 1683, 1686–87, 40 L.Ed.2d 90 (1974), are as follows.

Plaintiff-appellant Vemco, Inc. is a Michigan Corporation which manufactures and paints plastic automotive trim parts. In 1987, Vemco desired to build a new manufacturing facility which would include a "paint finishing system." On November 15, 1987, Vemco contracted with defendant-appellee Flakt, Inc., a Delaware corporation, to have Flakt build the paint finishing system for $15 million. At the time of the contract, defendant-appellee John Camardella was president of the division of Flakt which entered into the contract with Vemco; defendant-appellee Thomas Mark was the director of finance and business development of the division; and defendant-appellee Richard Aquino was vice president of sales for the division.

Vemco alleges that when negotiating the contract, Flakt knowingly misrepresented that it could build a system which would meet the specified system performance requirements for a total cost of $15 million dollars. Flakt guaranteed the system would be fully operational by September, 1989. In December, 1987, Flakt also communicated by letter its allegedly fraudulent $15 million estimate to Vemco's lenders, inducing those lenders to fund the purchase price of the

Donald McG. Rose (argued and briefed), Frost & Jacobs, Cincinnati, OH, Paul Lieberman, Bloomfield Hills, MI, for plaintiff-appellant.

Lita Masini Popke, Raymond G. McVeigh, Denis C. Monahan (argued and briefed), Magar, Monahan, Donaldson & Alber, Detroit, MI, Patrick M. Kirby, Flint, MI, for defendants-appellees.

Before: KENNEDY and MILBURN, Circuit Judges; and ALDRICH, District Judge.[*]

ANN ALDRICH, District Judge.

The plaintiff filed this action in the district court alleging violations of 18 U.S.C. § 1962(a) & (c) (RICO); conspiracy to commit fraud; and common law fraud. The defendants moved to dismiss the complaint under Fed.R.Civ.P. 12(b)(6). The district court referred the motion to dismiss to the magistrate judge, for preparation of a report and recommendation. The district court subsequently adopted in its entirety the re-

[*] The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation.

equipment and services Vemco bought from Flakt.

Various disputes arose over the project beginning in January, 1988. Flakt demanded that Vemco pay certain OCR charges, which Vemco believed Flakt was obligated to pay under the contract. Vemco was also dissatisfied with the progress of Flakt's work. In May, 1988, Flakt demanded payment of $2.8 million. Vemco alleges that it made that payment in reliance on Flakt's misrepresentations about how close the project was to completion. In July, 1988, Flakt demanded payment of an additional $4 million, and threatened litigation against Vemco and Vemco's lenders if the money was not paid.

Beginning in July, 1988, Flakt sent Vemco quarterly billing statements demanding that Vemco pay Flakt $6 million plus interest. In August, 1988, Flakt left the worksite and took with it the specifications for the project's electrical system, which made it impossible for Vemco to complete the project without great additional expense. Litigation began soon afterward. In September, 1988, the district court (in a separate action from this case) ordered Flakt to produce the plans to Vemco. Flakt failed to comply with the district court's order until July, 1991, when Flakt finally produced the documents. In December, 1988, Flakt allegedly threatened that it would run Vemco out of business if Vemco did not pay the money.

Vemco filed this RICO action in June, 1991.

## II.

■ This Court reviews *de novo* the district court's dismissal of the amended complaint under Rule 12(b)(6). *Dugan v. Brooks,* 818 F.2d 513, 516 (6th Cir.1987). The complaint should not be dismissed under Rule 12(b)(6) unless it appears without a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Vemco argues on appeal (1) that the district court erred in finding that Vemco had not sufficiently alleged an "investment injury" to state a claim under § 1962(a) of RICO; and (2) that the district court erred in finding that Vemco had not alleged acts of sufficient "continuity" to constitute a pattern of racketeering activity under § 1962(c) of RICO.

### A. Dismissal of Count I: § 1962(a)

Section 1962(a) of RICO provides in part:

It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity ... to use or invest, directly or indirectly, any part of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is· engaged in, or the activities of which affect, interstate or foreign commerce.

18 U.S.C. § 1962(a).

■ This Court has held that in order to state a claim under § 1962(a), a plaintiff must plead a specific injury to the plaintiff caused by the investment of income into the racketeering enterprise, *distinct from* any injuries caused by the predicate acts of racketeering. *Craighead v. E.F. Hutton & Co., Inc.,* 899 F.2d 485, 494 (6th Cir.1990) (dismissing § 1962(a) claim when plaintiffs alleged "only injuries traceable to the alleged predicate acts"). This Circuit's pleading requirement of a so-called "investment injury" is consistent with the holdings in all but one of the circuits which have addressed the question. *See Ouaknine v. MacFarlane,* 897 F.2d 75, 82 (2d Cir.1990); *Glessner v. Kenny,* 952 F.2d 702, 708–10 (3d Cir.1991); *Parker & Parsley Petroleum v. Dresser Indus.,* 972 F.2d 580, 584 (5th Cir.1992); *Nugget Hydroelec. L.P. v. Pacific Gas & Elec. Co.,* 981 F.2d 429, 437–38 (9th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2336, 124 L.Ed.2d 247 (1993); *Grider v. Texas Oil & Gas Corp.,* 868 F.2d 1147 (10th Cir.), *cert. denied,* 493 U.S. 820, 110 S.Ct. 76, 107 L.Ed.2d 43 (1989); *Danielson v. Burnside–Ott Training Ctr.,* 941 F.2d 1220, 1239–40 (D.C.Cir.1991); *but see Busby v. Crown Supply, Inc.,* 896 F.2d 833, 836–40 (4th Cir.1990).

Here, Vemco did allege reinvestment of racketeering proceeds:

[Defendants] received income derived directly ... and ... indirectly in the form of wages and, possibly other means, ... from a pattern of racketeering activity as detailed above.

Upon information and belief this income was used, directly or indirectly, in the operation of the enterprise [described above].

Amended Complaint ¶¶ 72–73. Nowhere in the amended complaint, however, did Vemco allege an injury stemming from the *investment,* distinct from injuries stemming from predicate acts. In fact, in a section of the amended complaint entitled "Injuries to Plaintiff," Vemco specifically alleged only a list of damages it suffered "[a]s a result of the Predicate Acts herein alleged which were part of a pattern of racketeering activity...." Amended Complaint ¶ 68. Such allegations do not meet this Circuit's requirement of a distinct "investment injury."

Vemco's reliance on this Court's opinion in *Newmyer v. Philatelic Leasing, Ltd.,* 888 F.2d 385 (6th Cir.1989), is misplaced. In *Newmyer,* this Court held that a district court had improperly dismissed for lack of an investment injury a § 1962(a) claim involving an investment plan. The district court had reasoned that the plaintiffs could not be injured by what the defendants did with the plaintiffs' money after they gave it up. We disagreed, noting that the *Newmyer* plaintiffs could have been injured by the investment itself if the investment plan into which they put their money (i.e., the enterprise) was itself funded with monies from *prior* racketeering against *prior* victims. This Court thus reversed the dismissal of the complaint, since an injury resulting from the investment of racketeering proceeds itself was possible.

*Newmyer* is distinguishable from the case at hand. Unlike the plaintiffs in *Newmyer,* Vemco does not allege that Flakt itself was built with racketeering proceeds amassed from others *prior* to Vemco's association with Flakt. Such an allegation would make Vemco's claim against Flakt analogous to that against the investment plan in *Newmyer.* Rather, Vemco alleges that the income Flakt derived from its racketeering *against Vemco* was *subsequently* used to operate the enter-

prise. Vemco never alleges that the reinvestment into the enterprise resulted in an injury separate from the "predicate acts" injuries.

The district court properly concluded that Vemco failed to plead an investment injury to state a claim under § 1962(a). Therefore, we affirm the district court's dismissal of Count I of the amended complaint.

## B. Dismissal of Count II: § 1962(c)

Section 1962(c) of RICO provides in part:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of an unlawful debt.

18 U.S.C. § 1962(c).

■ A plaintiff thus must plead sufficient facts to establish the existence of a "pattern" of racketeering activity. *See Sedima S.P.R.L. v. Imrex Corp.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). A pattern requires at least two "predicate acts" of racketeering activity within ten years of each other. *H.J., Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 237–38, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989). A pattern is not automatically established, however, by a large number of unrelated acts; the acts must be ordered and arranged so as to exhibit "relatedness" and "continuity." *Id.,* 492 U.S. at 238, 109 S.Ct. at 2900.

■ "Relatedness," that is, a relationship between or among the alleged predicate acts, is satisfied if the acts have "the same or similar purposes, results, participants, victims, or methods of commission, or are otherwise interrelated by distinguishing characteristics and are not isolated events." *Vild v. Visconsi,* 956 F.2d 560, 566 (6th Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 99, 121 L.Ed.2d 59 (1992).

■ The requirement of "continuity," or a threat of continuing criminal activity, ensures that RICO is limited to addressing Con-

**134**

gress's primary concern in enacting the statute, i.e. long-term criminal conduct. *See H.J., Inc.,* 492 U.S. at 241–42, 109 S.Ct. at 2902. The Supreme Court has described continuity as either "closed-ended," referring to a closed period of repeated conduct extending over a substantial period of time, or "open-ended," referring to past conduct "which by its nature projects into the future with a threat of repetition." *Id.* When a lawsuit is brought before the plaintiff can show activity over a long period of time, the crucial showing is "whether the *threat* of continuity is demonstrated." *Id.* (emphasis in original).

 The existence of only one scheme to defraud does not automatically preclude the finding of a pattern. *H.J., Inc.,* 492 U.S. at 240–41, 109 S.Ct. at 2901. However, the number of schemes is relevant to the inquiry. We agree with the Seventh Circuit that while "a single scheme cannot preclude the finding of a RICO pattern, we do believe it is significant when combined with other relevant factors in showing a lack of required 'continuity.'" *U.S. Textiles, Inc. v. Anheuser Busch Cos., Inc.,* 911 F.2d 1261, 1269 (7th Cir.1990).

 The district court found that Vemco did plead acts of sufficient "relatedness" to constitute a pattern. The court concluded, however, that the alleged conduct by Flakt did not demonstrate a sufficient threat of continuing racketeering activity to establish the required "continuity." The court thus dismissed the § 1962(c) claim for a failure to plead a pattern of racketeering activity.

 Vemco argues that Flakt committed predicate acts of "fraud, extortion, and obstruction of justice spanning more than four years from May 1987 through at least July 1991." The district court correctly concluded, however, that not all of the events alleged by Vemco qualify as predicate acts under RICO. Flakt's conduct in sending out billing notices from 1991 through 1992 pursuant to an allegedly fraudulent contract cannot be cited by plaintiffs to extend the duration of the fraudulent scheme. *See Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1418 (3d Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991); *Feinstein v. RTC,* 942 F.2d 34, 36 (1st Cir.1991). A

threat of litigation if a party fails to fulfill even a fraudulent contract, moreover, does not constitute extortion. *American Nursing Care of Toledo, Inc. v. Leisure,* 609 F.Supp. 419, 430 (N.D.Ohio 1984); *see United States v. Enmons,* 410 U.S. 396, 400, 93 S.Ct. 1007, 1010, 35 L.Ed.2d 379 (1973). Finally, actions taken years later by a party to avoid a court judgment on RICO predicate acts, such as Flakt's alleged refusal to turn over the blueprints which the district court ordered Flakt to produce, have been held to be too unrelated and distinct to be part of a pattern along with the earlier predicate acts. *Apparel Art Int'l, Inc. v. Jacobson,* 967 F.2d 720, 724 (1st Cir.1992).

When these acts are disregarded, the alleged predicate acts span a time period only from July, 1987, when the fraudulent contract was negotiated, through December, 1988, when Flakt allegedly threatened it would "run Vemco out of business" unless Vemco paid Flakt millions of dollars—a total of seventeen months. In addition, when the obstruction of justice allegation is disregarded, Vemco is left with allegations of fraud (in negotiating the contract; making representations to lenders; and reporting the status of the work) and one allegation of extortion (in threatening to run Vemco out of business). There is also only one victim.

We agree with the district court that the acts alleged are insufficient to show the "continuity" required for a pattern. Vemco has alleged a single fraudulent scheme by Flakt to misrepresent a guaranteed price in a building contract, and later to extort a higher price from Vemco. The total scheme, from the time of contract negotiations until the last threat alleged, lasted only seventeen months. The goal of the "single criminal episode," as the district court accurately characterized it, was to get Vemco to pay the cost of *one* paint system. There is no allegation that Flakt had any association with Vemco other than the allegedly fraudulent paint finishing system contract.

We find the fraudulent scheme at issue here similar to that in *Thompson v. Paasche,* 950 F.2d 306 (6th Cir.1991). In *Thompson,* this Court found that a single scheme involving the fraudulent sale of nineteen lots of land did not have the requisite "continuity" to state a claim under RICO. We stated:

Paasche's fraudulent scheme was an inherently short-term affair. He had nineteen lots to sell. Once he had sold all of the lots, the scheme was over. It had to be, he had no more land to sell. Thus, his scheme was, by its very nature, insufficiently protracted to qualify as a RICO violation.

*Id.* at 311. Here, Flakt has fewer victims than the defendant in *Thompson.* Flakt's instrumentality is not a finite piece of land, but rather a single construction job. There are no facts pleaded suggesting anything but that once Flakt received the money it was requesting in the billing statements, its scheme would be over, and it would end its association with Vemco. Moreover, there is no allegation that Flakt engaged in similar practices on other contracts involving other parties. As in *Thompson,* "there is no indication of any continuing opportunity or scheme" to extort additional monies from Vemco or anyone else, on this or other contracts. *See id.*

Vemco urges us to adopt instead the conclusion of the Second Circuit in a case similar on its facts, *Procter & Gamble v. Big Apple Indus. Bldgs., Inc.,* 879 F.2d 10 (2d Cir.1989). The *Procter & Gamble* plaintiff alleged predicate acts of fraud lasting over two years, surrounding the construction and leasing of a studio complex, including fraudulently inducing the plaintiff to enter a lease for the project, inducing plaintiffs to guarantee financing for the project, diverting escrow funds, and fraudulently collecting "interim rents" for delays caused by the defendants. The court concluded that the plaintiff had alleged "five separate schemes" relating to the single construction project and single victim, and found that the plaintiff had satisfied the continuity requirement.

We decline to adopt the reasoning of the Second Circuit in *Procter & Gamble.* We do not find that a defendant who engages in several different forms of fraud for a single purpose, to defraud a single victim through activities surrounding one construction project, without more, has engaged in more than one criminal scheme. Moreover, we find the Second Circuit's definition of continuity as meaning "that separate events occur over time and perhaps threaten to recur," 879

F.2d at 17, overinclusive in light of the Supreme Court's subsequent discussion in *H.J. Inc.* As the Court noted in *H.J. Inc.,* "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy [the continuity] requirement...." 492 U.S. at 242, 109 S.Ct. at 2902. The allegations in Vemco's complaint simply do not meet *H.J. Inc.'s* continuity standard.

Vemco has failed to establish either "closed-ended continuity," a closed period of repeated conduct over a substantial period of time, or "open-ended continuity," conduct projecting into the future with a threat of repetition. We cannot conclude that Flakt's alleged actions here, involving a single victim and a single scheme for a single purpose over seventeen months, constitute the type of "long-term criminal conduct" Congress sought to prohibit with RICO. *See H.J. Inc.,* 492 U.S. at 241–42, 109 S.Ct. at 2902. The district court's dismissal of the § 1962(c) claim for a failure to plead facts establishing the requisite "pattern" of racketeering activity under RICO was thus proper.

### III.

For the foregoing reasons, the dismissal of Counts I and II of the plaintiff's amended complaint is AFFIRMED.