**Ralph DeNUNE III, As Receiver Of TPSS Acquisition Corporation, Plaintiff,**

v.

**CONSOLIDATED CAPITAL OF NORTH AMERICA, INC., et al., Defendants.**

**No. 3:02CV7241.**

United States District Court, N.D. Ohio, Western Division.

Sept. 23, 2003.

Mark A. Davis, Stephen B. Mosier, McHugh, DeNune & McCarthy, Sylvania, OH, for Ralph DeNune, III, As receiver of TPSS Acquisition Corporation, Plaintiff.

Graham D. Guthrie, Stephen C. Musilli, Purcell & Scott, Dublin, OH, Thomas R. Merry, Barren & Merry, Columbus, OH, Timothy J. Kincaid, Plain City, OH, Stephanie P. Union, Purcell & Scott, Dublin, OH, for Consolidated Capital of North America, Inc., Paul Bagley, Richard Bailey.

Daniel E. Izenson, Steven C. Caffaro, Keating, Muething & Klekamp, Cincinnati, OH, Jeffrey S. Creamer, Shumaker, Loop & Kendrick, Toledo, OH, for Carl Casaretto.

## ORDER

CARR, District Judge.

Plaintiff. Ralph DeNune, as Receiver of the TPSS Acquisition Corporation, brings this suit against Consolidated Capital of North America, Inc., Paul Bagley, Richard Bailey, Carl Casareto, and individual and corporate John Doe defendants, asserting state and federal claims arising from the defendants' alleged looting of the assets of Toledo Pickling and Steel Sales, Inc. This court has jurisdiction under 28 U.S.C. §§ 1331 and 1332, as well as O.R.C. § 2307.382. Pending is a motion to dismiss filed by Consolidated, Bagley, and Bailey, and a motion to dismiss filed by Casareto. For the following ·reasons, the motions shall be granted in part and denied in part.

## BACKGROUND

In January, 1999, TPSS Acquisition Corporation ("TPSS"), an Ohio corporation and a wholly owned subsidiary of Consolidated Capital of North America, Inc. ("Consolidated"), a Colorado corporation, purchased the assets and assumed the liabilities of Toledo Pickling and Steel Sales, Inc. ("Toledo Pickling"). One such liability was an unsecured debt of $3,166,362.88 that Toledo Pickling owed to U.S. Steel Group, a unit of USX Corporation ("USX"), pursuant to an agreement known as the Stocks Abroad Agreement.

In conjunction with the TPSS purchase of Toledo Pickling, Consolidated entered into an agreement with USX on January 29, 1999, under which USX agreed to cancel the Toledo Pickling debt in exchange for common stock in Consolidated with a market value of $1,000,000, a promissory note in the amount of $2,000,000, and a cash payment of $166,362.88. Consolidat-

ed subsequently defaulted on the promissory note; indeed, it never made any payments on the note.

### A. State Court Proceedings

On July 28, 1999, USX filed an action against TPSS in the Lucas County Court of Common Pleas, alleging that, in violation of the Stocks Abroad Agreement, TPSS had removed and/or sold USX steel in its possession on consignment. USX claimed breach of the Stocks Abroad Agreement, conversion, unjust enrichment, quantum meruit, and replevin. On November 2, 1999, the court entered a default judgment against TPSS as to all the claims in the amount of $1,138,520.38 plus interest, other costs, and attorneys' fees.

Meanwhile, on August 12, 1999, Campbell Investors, FINOVA Capital Corporation, and National Bank of Canada sued TPSS in the Lucas County Court of Common Pleas, alleging that TPSS had defaulted on a lease and on various secured debts. The plaintiffs also filed an emergency motion for appointment of a receiver to take possession and control of TPSS' property and prevent dissipation or waste of corporate property and assets.

On August 20, 1999, acting pursuant to O.R.C. § 2735.01, the court appointed Ralph DeNune III as Receiver "of TPSS' assets including without limitation, all inventory, goods, accounts receivable, intellectual property, all contract rights, equipment, fixtures and general intangibles, whether now owned or hereafter owned or acquired and all proceeds of the ... Receivership Property[.]" (Doc. 31, Exh. A, at 3–4). The court stated that the order "may be modified or amended, upon motion by any party-in-interest, and upon notice and hearing." (Doc. 31, Exh. A, at 8).

This order gave DeNune authority to prevent a dissipation of the collateral, to allow payment of the secured debts to Campbell, FINOVA and the Bank of Canada. The order gave him the responsibility of disposing of the collateral, with the approval of FINOVA and the Bank of Canada, and the responsibility of collecting the accounts receivable by TPSS. The claims of these secured creditors were satisfied.

On June 19, 2001, DeNune filed a motion for authority to file a complaint in federal court against Consolidated and other defendants for the purpose of recovering TPSS funds which DeNune alleged were fraudulently transferred to Consolidated. In an order of July 25, 2001, the trial court granted DeNune's motion for authority to file this suit, in which DeNune alleges that Consolidated wrongfully deprived TPSS's creditors of their property. Consolidated did not appeal that order.

DeNune filed a motion for authority to execute an assignment agreement under which USX would assign to DeNune its claims against Consolidated. DeNune asserted that the purpose of this assignment was to allow him, as Receiver, to include in the federal suit claims for conversion, federal securities law violations, unjust enrichment, fraud, negligent misrepresentation, and failure to pay under the terms of a promissory note. On September 1, 2001, DeNune entered into an assignment agreement with United States Steel, L.L.C., the successor by merger to USX, for the assignment of claims relating to agreements entered into between USX and Consolidated Capital and USX and TPSS. The agreement assigns claims from United States Steel to DeNune for the benefit of unsecured creditors.

On February 21, 2002, the trial court issued an opinion and judgment entry granting DeNune's motion, finding that O.R.C. § 2735.04 permits marshaling of claims against the estate as well as marshaling of assets. Because the assignment would permit DeNune to obtain other as-

sets of the estate, the court concluded that it would benefit all of the claimants against the estate and that therefore a modification of the emergency order appointing the receiver was appropriate.

DeNune has standing to bring claims on behalf of TPSS and its creditors who have unpaid claims. On June 26, 2002, the state trial court upheld the validity of the assignment of USX's claims to DeNune for prosecution in this case. That order was appealed to the state appeals court. On March 21, 2003, the Court of Appeals affirmed the state trial court's decision conferring DeNune's standing to sue Consolidated and related parties. *Campbell Investors v. TPSS Acquisition Corp.*, 152 Ohio App.3d 218, 787 N.E.2d 78 (2003).

## B. Federal Court Proceedings

On May 10, 2002, DeNune filed a complaint against the defendants in this case. On September 30, 2002, DeNune filed an amended complaint against Consolidated, Paul Bagley, Richard Bailey, Carl Casareto, and corporate and individual John Does.[1] Bagley is a citizen of New Jersey who served as the chairman of Consolidated's Board of Directors and the chief executive officer. Bailey is a citizen of Rhode Island who, after March 10, 1998, served as Consolidated's chief operating officer and one of its director. Casareto is a citizen of California who served as Consolidated's chief financial officer after working as a Consolidated financial consultant.

DeNune alleges that immediately after Consolidated, acting through TPSS, obtained Toledo Pickling, the defendants wire-transferred the TPSS assets to themselves, entities they controlled, or persons to whom they were related. In five months, these transactions allegedly totaled $2,273,000. DeNune also alleges that defendants transferred from TPSS to themselves or for their own benefit 3,760 tons of consigned steel product, or the cash proceeds from that steel, valued at more than $1,000,000. This steel was owned by USX pursuant to the Stocks Abroad Agreement. This was the subject of the prior state court lawsuit brought by USX against TPSS in 1999. The steel had not been paid for by TPSS or the defendants, DeNune alleges. These transfers allegedly were made while TPSS was insolvent, or they rendered TPSS insolvent.

DeNune alleges that the transfers of money and steel were made with the intent to defraud TPSS and its creditors.

USX has assigned to DeNune all claims of USX against the defendants arising under or relating to the USX Note, the securities issued by Consolidated to USX, and the Stocks Abroad Agreement.

DeNune asserts the following claims in his amended complaint: 1) fraudulent transfers under O.R.C. § 1336.04(A)(1) and § 1336.04(A)(2); 2) fraudulent transfers under O.R.C. § 1336.05(A); 3) conversion; 4) unjust enrichment; 5) fraud; 6) violation of the Colorado Security Act, § 11–51–501(1); 7) negligent misrepresentation; 8) inducing breach of asset purchase agreement to third party beneficiaries; 9) civil conspiracy; 10) violation of federal and state racketeering statutes, 18 U.S.C. § 1962 and O.R.C. §§ 2923.32 and 2923.34; 11) alter ego liability; and 12) breach of fiduciary duty.

Defendants Consolidated, Bagley, and Bailey have filed a motion to dismiss. Defendant Casareto has filed a separate motion to dismiss. This court held its decision on those motions in abeyance pending the appeal in the state Court of Appeals, and now grants the motions in part and denies them in part.

---

1. The John Doe individual defendants and Doe company defendants have never been named or served. Pursuant to Fed.R.Civ.P. 4, they will be dismissed.

## STANDARD OF REVIEW

No complaint shall be dismissed unless the plaintiff has failed to allege facts in support of plaintiff's claim that, construed in plaintiff's favor, would entitle the plaintiff to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). When deciding a motion brought pursuant to Fed.R.Civ.P. 12(b)(6), the inquiry is essentially limited to the content of the complaint, although matters of public record, orders, items appearing in the record, and attached exhibits also may be taken into account. *See Yanacos v. Lake County,* 953 F.Supp. 187, 191 (N.D.Ohio 1996). The court must accept all the allegations stated in the complaint as true, *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984), while viewing the complaint in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). A court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).

A plaintiff is expressly permitted by the Federal Rules to plead alternative theories of recovery. *See* Fed.R.Civ.P. 8(a).

## DISCUSSION

### I. Preliminary Matters

Before addressing the merits of defendants' motions to dismiss, I consider three preliminary arguments in defendants' briefs. Defendants argue that: 1) DeNune lacks standing to bring the claims assigned by U.S. Steel; 2) the equitable doctrine of *in pari delicto* bars all claims against them; and 3) the doctrine of res judicata bars the claims assigned by U.S. Steel.

### A. Standing

Defendants argue that DeNune does not have standing to bring USX's claims against them. They argue that he was appointed as Receiver for the limited purpose of securing assets for the benefit of the secured creditors of TPSS: Campbell Investors, FINOVA, and the National Bank of Canada. Defendants argue that DeNune now brings this action on behalf of TPSS' unsecured creditors who were not parties to the state court action in which he was appointed, based on claims acquired from a third-party unsecured creditor. Defendants argue these actions are beyond the scope of authority granted by O.R.C. § 2735.04, the order appointing DeNune as Receiver, and Ohio case law.

The state Court of Appeal's affirmance of the trial court's order approving the assignment agreement and authorizing this suit overcomes these arguments. Moreover, as the Court of Appeals noted:

> In the present case, the trial court authorized the receiver to file suit against Consolidated and others alleging in part that Consolidated fraudulently deprived TPSS of its assets and, thereby, wrongfully deprived the TPSS creditors of their property. Consolidated did not appeal that order. Through the lawsuit, the receiver sought to recover funds belonging to TPSS, including assets of which it was fraudulently deprived, for the benefit of the creditors of TPSS. The assignment agreement arose out of Toledo Pickling's debt to USX which TPSS assumed through its purchase of Toledo Pickling. The receiver has alleged that Consolidated then fraudulently deprived USX of its right to collect that debt by entering into an agreement with USX under which USX relinquished a receivable account in exchange for Consolidated stock and a promissory note on which Consolidated defaulted. Accordingly, the subject of the assignment agreement, including the promissory note, is extensively intertwined with the allegedly fraudulent conveyances and conversion which the receiver has asserted de-

prived the TPSS [creditors] of their property.

152 Ohio App.3d at 223, 787 N.E.2d 78.

Based on the state appeals court's ruling in *Campbell Investors*, plaintiff DeNune has the power to bring the claims he asserts in his federal court complaint. Defendant's arguments to the contrary are unavailing in light of the affirmance of the state trial court's order expanding his authority.

### B. In Pari Delicto

Defendants argue that DeNune's claims are barred by the equitable doctrine of *in pari delicto* because TPSS was involved in the allegedly fraudulent activities.

The defense of *in pari delicto* "refers to the plaintiff's participation in the same wrongdoing as the defendant." *Bubis v. Blanton*, 885 F.2d 317, 321 n. 1 (6th Cir.1989) (quoting *Memorex Corp. v. IBM*, 555 F.2d 1379, 1382 (9th Cir.1977)). This principle prevents a plaintiff from recovering damages arising from a wrongdoing for which the plaintiff bears substantial responsibility. *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 307, 105 S.Ct. 2622, 86 L.Ed.2d 215 (1985).

In this case, DeNune has alleged that Consolidated and the individual defendants carried out their fraud through their complete stock ownership and domination of TPSS. Defendants, citing *In re Dublin Securities, Inc.*, 133 F.3d 377, 380 (6th Cir.1997), argue that the doctrine of *in pari delicto* prevents DeNune from asserting a cause of action against them, because the actions of Consolidated and its officers and directors can be imputed to TPSS, Consolidated's wholly owned subsidiary.[2]

Defendants' interpretation strains the doctrine of *in pari delicto*. DeNune has alleged a one-way transfer of funds: from TPSS to Consolidated and the related defendants. TPSS and its creditors are the victims of the alleged fraud, not its perpetrators or beneficiaries. Further, as Judge Posner explained in a closely analogous case, wherein an appointed receiver sued to recover looted corporate assets:

> "The appointment of the receiver removed the wrongdoer from the scene. . . . Put differently, the defense of *in pari delicto* loses its sting when the person who is *in pari delicto* is eliminated. Now that the corporation[ ] . . . [is] controlled by a receiver whose only object is to maximize the value of the corporation[ ] for the benefit of [its] investors and creditors, we cannot see an objection to the receiver's bringing suit to recover corporate assets unlawfully dissipated by [a principal of the corporation]."

*Scholes v. Lehmann*, 56 F.3d 750, 754–55 (7th Cir.1995) (citation omitted). This is almost precisely the circumstance presented in the instant case, and I agree with the holding. I find *Scholes* to be persuasive, *In re Dublin Securities* to be inapplicable, and defendants' assertion of the *in pari delicto* equitable defense to be without merit.

### C. Res Judicata

Defendants argue that the claims DeNune brings pursuant to assignment by USS should be barred by the doctrine of *res judicata*. Plaintiff argues that defendants' assertion of this argument is premature under Ohio law, or alternatively, incorrect

---

**2.** *In re Dublin Securities* is distinguishable on its facts from the case at bar. In that case, a trustee for the bankrupt corporation sued two law firms for legal malpractice related to securities fraud. The trustee specifically admitted the corporation's complicity/instrumentality in the fraud perpetrated by the defendant law firms. Moreover, the trustee plaintiff in that case was not attempting to sue the principals of the corporation. *In re Dublin Securities* does not assist defendants.

on the merits because there are different parties and different claims in this cause of action.

■ Plaintiff first argues that because the Ohio Supreme Court has interpreted Ohio's civil procedure rules to hold that *res judicata* may not be raised in a motion to dismiss, defendants cannot raise *res judicata* here in federal court. Unfortunately, this argument overlooks the fact that this is a federal, not a state court, and the Federal Rules of Civil Procedure govern motions in this court. There is no corresponding federal precedent for disallowing a *res judicata* defense in a Fed.R.Civ.P. 12(b)(6) motion to dismiss; indeed, there is overwhelming case law to the contrary. *See, e.g., Rushford v. Firstar Bank, N.A.,* 50 Fed. Appx. 202, 203 (6th Cir.2002) (affirming "the district court's dismissal pursuant to Fed.R.Civ.P. 12(b)(6) based on the doctrine of *res judicata*"); *City of Canton v. Maynard,* 766 F.2d 236, 239 (6th Cir. 1985) (per curiam) (affirming district court's rule 12(b)(6) dismissal on *res judicata* grounds). Defendants are entitled to raise the *res judicata* issue in this motion to dismiss.

■ Federal courts must give a state court judgment the same preclusive effect it would have in the state court. 28 U.S.C. § 1738; *see also Heyliger v. State Univ. & Cmty. Coll. Sys.,* 126 F.3d 849, 851–52 (6th Cir.1997). As to claim preclusion in Ohio under the doctrine of *res judicata,* "a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Grava v. Parkman Twp.,* 73 Ohio St.3d 379, 382, 653 N.E.2d 226 (1995). The judgment will have preclusive effect "as to all claims which were

or might have been litigated in the first lawsuit." *Rogers v. City of Whitehall,* 25 Ohio St.3d 67, 69, 494 N.E.2d 1387 (1986). *Res judicata* will bar the action or claim even if it is based on a different legal basis, or "would emphasize different elements of the facts." *Grava,* 73 Ohio St.3d at 382–83, 653 N.E.2d 226 (quoting Restatement (Second) of Judgments § 24, comm. c at 200). As to issue preclusion, a party and its privies are precluded from re-litigating facts or issues previously litigated and decided in a prior suit by a court of competent jurisdiction. *Thompson v. Wing,* 70 Ohio St.3d 176, 183, 637 N.E.2d 917 (1994).

■ I find that plaintiff DeNune is precluded, under Ohio law, from re-litigating the issue of the conversion of the consigned steel, in violation of the Stocks Abroad Agreement. First, it is clear that DeNune, as the assignee of the USX judgment against TPSS in the prior suit, is in privity with USX. Second, it is clear that the issue of TPSS' liability for the consigned steel was actually litigated and decided by a court of competent jurisdiction. USX obtained a default judgment of approximately $1.1 million "for damages suffered by USX as a direct and proximate result of TPSS' wrongful removal and/or sale of USX's product in violation of the terms of that certain Stocks Abroad Agreement." Judgment Entry, Docket, *USX Corp. v. TPSS Acquisition Corp,* Case No. G–4801–CI–199903475 (Lucas Co. Ct. of Common Pleas, Nov. 3, 1999). All elements of issue preclusion are met here; DeNune cannot re-litigate the consigned steel issue.[3]

■ However, defendants' argument that any claims USX might have with re-

---

3. This finding, of course, does not prevent plaintiff from seeking to enforce the judgment in state court.

gard to any of its prior business dealings with TPSS and/or Consolidated cannot form a basis for DeNune's suit, is not well-taken, for three reasons. First, Consolidated, not TPSS, contracted with USX to assume Toledo Pickling's liabilities in order to facilitate TPSS' acquisition of Toledo Pickling. Consolidated, although the parent corporation to TPSS, is not TPSS. Second, there is no reason that USX would be required to bring, in the first lawsuit against TPSS for breach of the Stocks Abroad Agreement, all claims it had against TPSS' parent corporation (Consolidated), even if USX could have brought them at that time. Finally, there is no evidence in the record as it currently stands to support the conclusion that USX had knowledge of Consolidated's breach of the January 29th, 1999 agreement to assume Toledo Pickling's liabilities, or of the defendants' alleged looting of TPSS' assets, when it brought its lawsuit against TPSS in July of 1999. In short, I find that claims preclusion, or *res judicata*, does not bar DeNune from litigating, on USX's behalf, claims related to Consolidated's assumption of Toledo Pickling's liabilities or the alleged looting of TPSS' assets..

In summary, issue preclusion bars relitigation of the consigned steel issue. Each count that relies on the consigned issue as a factual predicate for a claim for relief shall therefore be dismissed in part. However, any and all claims or parts of claims which are not dependent on the consigned steel issue survive dismissal.

## II. Adequacy of Pleadings

### A. Fraudulent Transfer

Defendants assert that plaintiff's fraudulent transfer claims, in Counts I & II, are subject to dismissal because defendants are not "debtors" for purposes of the fraudulent transfer statutes found in O.R.C. § 1336. Defendants cite no law to support this argument.

The statute in question defines "debtor" as "one who is liable on a claim." O.R.C. § 1336.01(F). A "claim" is defined as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." *Id.* § 1336.01(C).

■ Plaintiff DeNune seeks to establish that plaintiff, as Receiver, has a right to recover from defendants on the claims that TPSS' creditors had prior to the alleged looting of TPSS' assets. The complaint sufficiently alleges facts necessary to support the allegation that defendants are or were "debtors" for purposes of Ohio's fraudulent transfer laws. These claims will be permitted to proceed; the motions to dismiss are denied as to Counts I & II as to this issue.[4]

### B. Common Law Conversion

Plaintiff asserts a claim for common law conversion. Defendants argue it should be dismissed because it is really a contract claim masquerading as a tort claim.

I note that to the extent this claim requires, for its factual predicate, the issue of the consigned steel, it is barred by *res judicata*. I also note that the amended complaint also alleges conversion of the wired funds, which as noted above, is not barred.

■ In Ohio, a tort claim for common law conversion is one that alleges the defendants exercised dominion or control wrongfully over the property of another, in denial of or under a claim inconsistent with

---

4. However, as mentioned above in the *res judicata* analysis, the parts of Counts I & II relying on the issue of the consigned steel are dismissed. Therefore, Counts I & II only survive to the extent that they are based on facts other than the consigned steel.

854

their rights. *See Ohio Telephone Equipment & Sales, Inc. v. Hadler Realty Co.*, 24 Ohio App.3d 91, 93, 493 N.E.2d 289 (1985). Such tort claim lies against a contracting party independent of a breach of contract claim so long as the plaintiff alleges a breach of a duty owed separately from obligations created by the contract. *See Battista v. Lebanon Trotting Ass'n*, 538 F.2d 111, 117 (6th Cir.1976).

■ The amended complaint alleges the requisite elements for a conversion claim. It alleges defendants wrongfully looted assets of a corporation when they had no legal right to do so. The amended complaint also sufficiently alleges a duty on the part of the principals of Consolidated/TPSS not to purloin TPSS' assets which did not rightfully belong to them, separate and apart from any duty created by contract.

The primary problem with defendants' arguments is their incorrect assumption that USX is the plaintiff in this case; it is not. Plaintiff DeNune, as Receiver of TPSS, is suing on behalf of TPSS itself, as well as on behalf of all of its creditors with claims outstanding. Defendants seek to translate the amended complaint into a contract action by USX. This is an incorrect, and unnecessary, translation. Defendants' motions to dismiss will be denied as to Count III to the extent that it rests on facts other than the consigned steel.

### C. Unjust Enrichment

Plaintiff asserts a claim for unjust enrichment. Defendants argue it should be dismissed because it is really a contract claim masquerading as a tort claim, and because plaintiff did not allege that benefits were conferred on defendants by the Receiver.

■ A claim for unjust enrichment requires the following elements: 1) a benefit was conferred upon the defendant by the plaintiff; 2) the defendant accepted/appreciated the benefit conferred; 3) acceptance of the benefit without compensation for its value would, under the circumstances, be inequitable. *See, e.g., Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183, 465 N.E.2d 1298 (1984).

■ I find defendants' arguments meritless. First, the amended complaint sufficiently alleges the elements of an unjust enrichment claim, by alleging defendants wrongfully caused TPSS' assets (the benefit) to be conferred on them, and that it is inequitable to allow them to keep the assets without repayment. Second, defendants distort this cause of action to argue that plaintiff DeNune himself did not confer a benefit on defendants. While that may be true, that is not the proper inquiry. As defendants admit, the Receiver stands in the shoes of TPSS. (Doc. 47, at 6.) Therefore, it is clear that the complaint alleges that benefits were conferred on defendants wrongfully by and through TPSS, and that it would be inequitable to let them keep those benefits without repayment. And finally, for the reasons set forth above in the analysis regarding Count III for conversion, I find that this is not a breach of contract claim masquerading as a tort claim.

I will deny defendants' motions to dismiss Count IV for unjust enrichment to the extent that it is based on facts other than the consigned steel issue.[5]

### D. Fraudulent and Negligent Misrepresentation Claims

■ Plaintiff asserts claims for both fraud (Count V) and negligent misrepre-

---

**5.** To the extent this claim requires, for its factual predicate, the issue of the consigned steel, it is barred by *res judicata*.

sentation (Count VII). These claims are presumably asserted in the alternative to each other, as "[a] party cannot recover under theories of both fraud and negligence based upon the same course of conduct." *Textron Fin. Corp. v. Nationwide Mutual Ins. Co.*, 115 Ohio App.3d 137, 148, 684 N.E.2d 1261 (1996). While plaintiff will ultimately not be able to recover under both Count V and VII for the same alleged misrepresentations, this is not a basis for dismissal under Rule 12(b)(6). *See* Fed. R.Civ.P. 8(a); *see also Textron,* 115 Ohio App.3d at 149, 684 N.E.2d 1261.

Defendants first argue that the fraud claim is not pleaded with particularity, as required by Rule 9(b). To meet the heightened pleading standard for fraud, a plaintiff must allege "specific[ ] times, places, [and] contents ... of the underlying fraud." *Vild v. Visconsi,* 956 F.2d 560, 567 (6th Cir.1992). At a minimum, a plaintiff must "allege the time, place, and content of the alleged misrepresentation on which [it] has relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n,* 176 F.3d 315, 322 (6th Cir.1999) (citation omitted). Rule 9(b) must, however, be read in conjunction with Rule 8, which calls for a short, concise statement. *American Town Ctr. v. Hall 83 Assoc.,* 912 F.2d 104, 109, 113 (6th Cir.1990).

I find that plaintiff has sufficiently pleaded fraud under Rule 9(b). The amended complaint sets forth a list of specific misrepresentations allegedly made by defendant Bagley in a "face-to-face meeting at USX's office in Pittsburgh on or about October 30, 1998" on behalf of defendants. (Doc. 31, ¶¶ 33, 34.) The list of misrepresentations clearly gives the content of the statements. The amended complaint also clearly alleges the fraudulent scheme, intent of the defendants, and

injury resulting from the fraud. This is all that Rule 9(b) requires.

■ Defendants next argue that the fraud and negligent misrepresentation claims are really contract actions masquerading as tort claims. Again, I disagree. There is no bar to a fraud or negligent misrepresentation claim that alleges fraud/negligence in the negotiation process leading to the contractual relationship. *Ferro Corp. v. Blaw Knox Food & Chem. Equip. Co.,* 121 Ohio App.3d 434, 440–41, 700 N.E.2d 94 (1997).

I will therefore deny defendants' motions to dismiss Counts V and VII, to the extent that they do not rely on the issue of the consigned steel.

### E. Colorado Securities Act

Defendants' request dismissal of the securities fraud count under Colorado law based on two arguments: 1) it is not alleged with sufficient particularity; and, 2) it is essentially a breach of contract claim masquerading as a tort claim.

The Colorado securities fraud statute at issue provides:

It is unlawful for any person, in connection with the offer, sale, or purchase of any security, directly or indirectly:

(a) To employ any device, scheme, or artifice to defraud;

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

Colo.Rev.Stat. § 11–51–501(1).

I find that the count is alleged with sufficient particularity. Count VI alleges,

with the aid of the incorporated allegations, that Consolidated made certain enumerated material misrepresentations and omissions in regard to the "debt for equity swap" (Compl.¶ 41), which induced USX to agree to receive a certain number of Consolidated shares in exchange for cancelling $1 million in Toledo Pickling's debt. That is all that is required.

Further, I find that this is not a breach of contract claim masquerading as a tort claim. As noted above, a tort claim will lie against a contracting party independent of a breach of contract claim so long as the plaintiff can allege a breach of a duty owed separately from one created by the contract. See Battista, supra. Here, defendants owed a duty under Colorado securities fraud law, separate and apart from contractual duties created by the January 29th, 1999 agreement with USX, not to engage in misleading/fraudulent behavior in connection with the security transaction. That is sufficient for purposes of this motion.

Defendants' motions to dismiss the Colorado securities claim (Count VI) are denied.

### F. Inducing Breach of Asset Purchase Agreement

Plaintiff sets forth a cause of action against defendants for inducing a breach of contract (specifically, the Asset Purchase Agreement ["APA contract"] ). Defendants assert that the creditors of TPSS were not intended beneficiaries of the APA contract.

 Ohio law allows an intended beneficiary to file a third-party claim, unless the promisor/promisee has agreed otherwise. See, e.g., Hill v. Sonitrol of Southwestern Ohio, Inc., 36 Ohio St.3d 36, 40, 521 N.E.2d 780 (1988) (quoting Restatement of the Law 2d, Contracts § 302). "[I]n order for a third-party beneficiary to have enforceable rights under a contract, circumstances surrounding the promise between the promisor and promisee must indicate that the promisee intended to benefit the third party, and the performance of that promise must also satisfy a duty owed by the promisee to the beneficiary." Anderson v. Olmsted Util. Equip. Inc., 60 Ohio St.3d 124, 130 n. 5 (1991).

In the instant case, the APA contract is attached to the amended complaint as Exhibit B. There is no provision in the contract which would prevent a third-party beneficiary claim under the contract. I am, at this stage, required to accept as true plaintiff's allegation that TPSS' creditors were an intended beneficiary under the APA contract. I cannot decide, at the motion to dismiss stage, whether the "circumstances surrounding the promise ... indicate[d] ... [an] inten[t] to benefit" the creditors represented by plaintiff in the instant suit. Id.

I will therefore deny defendants' motion to dismiss this claim.

### G. Civil Conspiracy [6]/Federal and State RICO

In Count X, plaintiff asserts a claim under the federal Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., and under the state Ohio Pattern of Corrupt Activities Law ("PCA"), O.R.C. §§ 2923.32 & 2923.34. Defendants assert that these

---

6. Defendant Casareto's assertion that the Civil Conspiracy claim in Count IX is deficient because it did not allege maliciousness is incorrect; plaintiff specifically used the word "malicious" to describe defendants' actions/intent. (Doc. 31, ¶ 56.) Defendants did not further object to Count IX other than to

assert that it is a breach of contract action masquerading as a tort claim. For the reasons articulated above, I find this contention to be meritless. However, Count IX is dismissed in part, to the extent that it relies on the consigned steel issue.

claims must be dismissed for failure to allege an enterprise, a pattern of racketeering, predicate acts, and continuity. Ohio courts look to federal case law applying RICO when analyzing PCA claims. *See, e.g., U.S. Demolition & Contracting, Inc. v. O'Rourke Constr. Co.*, 94 Ohio App.3d 75, 83, 640 N.E.2d 235 (1994). Thus, the following analysis applies equally to the RICO and the PCA claims.

RICO provides, in relevant part:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).

■ To establish a violation of § 1962(c), a plaintiff must prove injury caused by a person who conducts the affairs of an enterprise through a pattern of racketeering activity. The elements of a RICO claim, therefore, are: 1) two or more predicate offenses; 2) the existence of an enterprise; 3) a nexus between the pattern of racketeering activity and the enterprise; and 4) resulting injury to business or property. *VanDenBroeck v. CommonPoint Mortgage Co.*, 210 F.3d 696, 699 (6th Cir.2000) (citing *Frank v. D'Ambrosi*, 4 F.3d 1378, 1385 (6th Cir.1993)). Further, the Supreme Court has held that "in order to be held responsible under the Act, a defendant must have not only participated in the scheme, but must have also participated in the operation or management of the enterprise itself." *Id.* (citing *Reves v. Ernst & Young*, 507 U.S. 170, 183, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993)). "Courts have repeatedly held in RICO cases alleging mail fraud and wire fraud as the 'predicate acts,' the underlying fraudulent activities must be pled with particular-

ity." *Eby v. Producers Co-op Inc.*, 959 F.Supp. 428, 431 (W.D.Mich.1997) (quotation omitted).

■ As to element one (predicate acts), plaintiff alleges that the RICO defendants (all named defendants except Consolidated) pursued the "acquisition of financially troubled or distressed companies" and then depleted the assets of the acquired companies, "in violation of the rights of the prior creditors." (Doc. 31, ¶ 67.) Plaintiff specifically alleges two victims, other than the instant victims, of such a scheme: Angeles Metal Trim Company (*id.* ¶ 68–69), and Capitol Metals Co. (*id.* ¶ 70–71). Plaintiff further alleges wire fraud by the RICO defendants in transmitting/transferring the assets of TPSS to "themselves and their subsidiaries and affiliated companies" during a five to six month period beginning in January of 1999. *Id.* ¶ 64–65. Plaintiff also incorporates by reference the previous allegation, specifically found in paragraph 12, regarding the challenged wire transactions. *Id.* ¶ 12. Also, attached to the amended complaint as Exhibit D is a listing of payments made from TPSS to related parties during the relevant time period, which includes the dates, amounts, and recipients of the challenged wire and/or check transactions. (Doc. 31, Exh. D.) I find that the allegations, together with the attachments to the amended complaint, sufficiently assert the predicate acts underlying the RICO claim with particularity.

As to element two, under RICO, an enterprise is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The Supreme Court has defined an enterprise as a "group of persons associated together for a common purpose of engaging in a course of conduct." *United States v.*

*Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981).

■ Plaintiff specifically alleges that: Consolidated constitutes an "enterprise" for purposes of RICO liability; the individually named defendants are "persons" for purposes of RICO; and those "persons" were "employed by or associated with" the enterprise (Consolidated) at all relevant times. He further alleges an organizational structure within Consolidated and by and through the associated defendants, which would allow the enterprise to function as a racketeering organization, separate and apart from the normal and usual business Consolidated could or would transact. The RICO defendants, not Consolidated, as clearly pled in the complaint, are the persons responsible for the RICO violations. I find these allegations sufficiently plead the "enterprise" element of the RICO claim.

■ As to the "pattern of racketeering" element, a plaintiff must allege at least two predicate acts of racketeering within ten years of each other, and the acts must demonstrate "relatedness" and "continuity." *Vemco, Inc. v. Camardella,* 23 F.3d 129, 133 (6th Cir.1994) (citing *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 237–38, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989)). "Relatedness" is established if the acts have "the same or similar purposes, results, participants, victims, or methods of commission, or are otherwise interrelated by distinguishing characteristics and are not isolated events." *Id.* "Continuity" can be established by any of three different methods: 1) the related predicate acts involve "a distinct threat of long-term racketeering activity, either implicit or explicit;" 2) the predicate acts are "part of an ongoing entity's regular way of doing business;" or 3) the predicate acts are "a regular way of conducting defendant's ongoing legitimate business." *H.J. Inc.,* 492 U.S. at 242–43,

109 S.Ct. 2893. Several factors may be used to determine whether the plaintiff can meet the continuity requirement: "1) the number and variety of predicate acts; 2) the length of time over which the acts were committed; 3) the number of victims; 4) the presence of separate schemes; and 5) the occurrence of distinct injuries." *Griffin v. NBD Bank,* 43 F.Supp.2d 780, 787 (W.D.Mich.1999) (citations omitted).

■ Plaintiff's amended complaint sufficiently alleges the relatedness and continuity of the predicate acts. As to relatedness, the amended complaint alleges that: the fraudulent wire transfers had the purpose of looting the assets of TPSS to prevent creditors from being paid, and actually had that result; the participants and victims were the same; and the acts were committed in the same/a similar way. As to continuity, the amended complaint alleges numerous acts of wire fraud from TPSS' accounts to accounts of defendants or related entities, spanning approximately six to seven months.

Plaintiff also alleges two separate victims, other than the victims in the instant case, of the same or similar schemes to loot the assets of other distressed companies, in derogation of creditors' rights, spanning over two and a half years. Plaintiff alleges separate and distinct injuries, to the looted companies themselves, and to the creditors of the looted companies. Admittedly the time frames included here are somewhat limited; however, the presence of multiple victims (looted corporations and their creditors) of the same allegedly fraudulent scheme, coupled with the apparent success of the scheme, threatens the type of long-term activity which RICO was designed to address. In this way, this case is distinguishable from *Vemco, supra,* in which there was a single victim, and a single criminal scheme surrounding one single project. Here, plaintiff alleges a

similar scheme with several victims. Indeed, it evidences that this is a typical way in which the RICO defendants conducted the regular, supposedly legitimate business by and through Consolidated.

Plaintiff has sufficiently alleged the RICO/PCA claims. Defendants' motion to dismiss Count X shall be denied.

## H. Alter Ego Liability/Piercing the Corporate Veil

Plaintiff has asserted a claim for the relief under the theory of "alter ego liability," also known as "piercing the corporate veil." Defendants' only defense against Count XI is a claim that plaintiff has not alleged that he, as Receiver, nor TPSS, has suffered damage from the alleged control of the corporation.

I find defendants' arguments meritless. The entirety of the complaint alleges millions of dollars in damage to TPSS' ability to repay its creditors and to the creditors themselves. Plaintiff claims the defendants' unethical/illegal handling of TPSS' assets caused those losses. Count XI will stand.

## I. Breach of Fiduciary Duty

Plaintiff alleges a claim in Count XII for breach of fiduciary duties.[7] Defendants argue that this count must be dismissed because defendants did not owe a fiduciary duty to TPSS' creditors. Defendants are incorrect.

■ Under long-standing Ohio law, the officers and directors of a corporation that is insolvent or is on the brink of insolvency owe a fiduciary duty to the corporation itself and to its creditors not to waste corporate assets which otherwise could be used to pay corporate debts. *See Thomas v. Matthews*, 94 Ohio St. 32, 47, 113 N.E. 669 (1916).[8] The unpublished case, *KMA Acquisitions Corp. v. Coleman*, 1993 WL 431201 (Ohio App., Oct. 19, 1993), cited by defendants does not hold otherwise.[9] Here, plaintiff has alleged, with the requisite factual allegations, that defendants owed a fiduciary duty to not only TPSS, but to its creditors, not to waste TPSS' assets. The law permits this breach of fiduciary claim, and it is sufficiently pleaded in the amended complaint.

Defendants' motions to dismiss Count XII are denied.

## III. Casareto's Motion To Dismiss

Defendant Casareto's motion to dismiss asserts, in addition to the arguments set forth and dealt with above as to each individual count in the complaint, that plaintiff has failed to specify Casareto's involvement in any of the wrongdoing giving rise to the claims for relief. Defendant Casareto is mistaken.

The complaint clearly sets forth that Casareto was the Chief Financial Officer of Consolidated at the time of the challenged transfers/transactions. He is then referred to with the other defendants in the collective descriptor "defendants" in every other count in the complaint. Defendant Casareto also overlooks the fact that each specific count in the complaint incorporates by reference every allegation set forth in the preceding paragraphs.

---

7. Again, to the extent this claim relies on the consigned steel issue, it is dismissed in part.

8. This proposition is not unique to Ohio law. *See also In re Buckhead America Corp.*, 178 B.R. 956, 968 (D.Del.1994) (directors of corporation "operating in the vicinity of insolvency" owe fiduciary duties to "corporate enterprise ... including the corporation's creditors").

9. In *KMA*, the court held simply that the plaintiff had failed to allege facts to support a fiduciary relationship between the parties in that case. Besides not being a precedential case, *KMA* is distinguishable from the instant case, wherein facts to support a fiduciary relationship have been alleged.

Plaintiff has designated defendant Casareto as one of several defendants, and then has alleged that defendants, acting collectively, pursued a course of action which led to the looting of the assets of TPSS in derogation of the creditors' rights. There is no requirement that each allegation list, by individual name, every defendant to which the allegation applies, when the collective "defendants" sufficiently puts all defendants on notice that this claim is being asserted against them. I will not read such a requirement into the Federal Rules of Civil Procedure, because I am bound to construe "[a]ll pleadings . . . so [ ] as to do substantial justice." Fed. R.Civ.P. 8(f).

Defendant Casareto's motion to dismiss is denied on this basis; it is granted in part and denied in part as to the individual counts in the complaint, as explained in the substantive analysis above.

## CONCLUSION

It is therefore

**ORDERED THAT:**

1. The John Doe individual defendants and Doe company defendants be, and they hereby are, dismissed, pursuant to Fed.R.Civ.P. 4.

2. The motions to dismiss be, and they hereby are, granted in part as to the consigned steel issue found in counts I, II, III, IV, V, VII, IX, and XII; otherwise, as to all other counts and claims, the motions are denied.

**So ordered.**